*J. C. & J. Applegate*, for appellant.

THE CITY OF INDIANAPOLIS *v.* THE GRAND MASTER, &c., OF THE GRAND LODGE OF INDIANA.

TAXATION.—CHARITABLE ASSOCIATION.—Suit to enjoin the collection of taxes assessed upon the building commonly known as *Masonic Hall.* The complaint alleged that the *Grand Master*, &c., was a benevolent corporation; that the building was used for purposes of universal benevolence and charity.

*Held*, that the allegations made a case entitling the property to exemption, under the statute.

EXEMPTION FROM TAXATION.—CONSTRUCTION OF STATUTE.—The general policy of this state is to subject all private property to the burden of taxation, and hence, statutes exempting property from taxation must be strictly construed.

SAME.—LITERARY INSTITUTIONS.—In favor of literary and scientific institutions possibly a more liberal construction would be required, for the reason that the encouragement of educational facilities is in furtherance of a public policy manifested in our constitution and laws.

City of Indianapolis *v.* The Grand Master, &c., of the Grand Lodge of Indiana.

SAME.—The use of a building by lessees for concerts, or for mercantile purposes, is not a use by a charitable institution within the meaning of the statute, though the rents derived therefrom are devoted to charitable uses.

CHARITABLE SOCIETY.—LIMITATION TO A CLASS.—That an institution limits its benefactions to the membership of a particular religious or secular organization does not deprive it of the character of a charitable institution.

APPEAL from the *Marion* Circuit Court.

FRAZER, C. J.—This was a suit to restrain the collection of city taxes upon the building in *Indianapolis* commonly known as *Masonic Hall,* and the lot upon which it stands, being the property of the plaintiff, a benevolent corporation. The first paragraph of the complaint averred that the plaintiff was a benevolent and charitable institution; that the building had been erected and was used for purposes of "universal benevolence and charity, and the relief of suffering humanity wherever it exists, but more immediately and especially the relief of indigent and distressed worthy *Free Masons,* their widows and orphans, and the support of the latter without reward," and that the entire income, rents and revenues derived from the property were for all time exclusively devoted to those purposes. A demurrer to this paragraph was, we think, correctly overruled. The statute is plain, that "every building erected for the use of any benevolent or charitable institution, &c., and the tract of land on which such building is situate, not exceeding twenty acres," shall be exempt from taxation. 1 G. & H. 70. Tested by the most rigid rules of strict construction, this paragraph makes a case within the statute.

The complaint, though an entire thing, and counting upon only one cause of action, appears in the transcript to be divided into six paragraphs, in accordance with a motion of the defendant for that purpose. It does not appear that any order was made by the court upon the motion, and we are therefore left to infer, the facts not being shown, that the plaintiff voluntarily did it, thus obviating any occasion

for the court to act upon the motion. The consequence is, that what appear to be paragraphs numbered 2, 3, 4, 5 and 6 of the complaint, being separated from matter essential to make a case for the plaintiff, and not containing in either of them anything to show that the property was owned by the plaintiff, or was taxed, or was in danger of being sold for taxes, were each obviously bad, and the demurrers which were filed to them and overruled should have been sustained. Answers were filed to them, and demurrers to those answers sustained, but no occasion exists for further remark concerning these latter pleadings, than that the answers were sufficient to bad paragraphs of the complaint. Interesting questions arising out of these pleadings are discussed by counsel, and we are requested by the appellant to pass upon them, but in this state of the record there is nothing requiring us to do so for the purposes of the case before us, and we deem it better to adhere to our usual practice of determining only the questions necessarily arising upon the record.

To the first paragraph of the complaint, the defendant answered: 1. That the building was erected by a joint stock company, who received dividends and profits upon the stock therein; that the building was, for five years, (when is not stated,) owned by said joint stock company; that afterward the plaintiff, with one citizen, became the owners thereof, and have since received and enjoyed large profits from the use and occupancy thereof. 2. That the property, except one-eighth thereof, is leased and used by various persons for vending merchandise, and exhibiting performances, such as theaters, concerts, &c., wherefore it is insisted that seven-eighths of the property is subject to taxation. 3. That said institution is not charitable and benevolent, for that it extends charity only to masons, who become such only by paying large sums of money for admission fees, not more than one-hundredth part of the community being such masons. To each of these defenses a demurrer was sustained.

The language of the statute already cited is not very apt, nor are we able to perceive that much was added to its perspicuity or scope by the amendment of 1861. But it is manifest that its purpose was to encourage permanent educational and benevolent establishments, by exempting from the burdens of taxation such property as is mentioned in the act itself. The property mentioned, so far as the case before us requires it to be specified, is the building and ground, not exceeding twenty acres, used by it for the purposes of its organization, whether it own the property, or be permitted by the owner, without charge, to use it for such purposes. The question presented by the demurrer to the first and second paragraphs of the answer was, whether a building actually used in part for other purposes, and yielding an income in consequence, which income was wholly devoted to benevolent purposes by the institution, was within the act? The answer to this question depends entirely upon the rule of construction which shall be applied to the statute.. A very liberal construction of it might exempt the property from taxation. Construction can never be resorted to for the purpose of defeating the legislative intention, or accomplishing purposes not designed, for its legitimate object is solely to discover that intention. The general policy of this State, and indeed of all free governments, is to subject all private property to this burden, and it is therefore not fair to assume that any has been intended to be relieved from it, unless the legislature has clearly expressed such a purpose. Hence, the rule of strict construction has, we believe, usually been applied to such statutes. This cannot properly be placed upon the ground that such legislation is merely improper or unwise in the abstract, for that would be to make the meaning of the law depend, in good measure, upon the opinion of the judge concerning its propriety, losing sight of the duty of the court, which is to discover the purpose of the law maker as declared, and then faithfully to apply it to the case in judgment. That the rule of strict construction must be

applied to this statute, so far as it relates to cases like this, has been so often declared by this court, and has been so uniformly held everywhere, that we are not at liberty to regard the question as an open one. *Hanna* v. *The Commissioners, &c.,* 8 Blackf. 352; *Orr* v. *Baker,* 4 Ind. 86; *Indianapolis* v. *McLean,* 8 *id.* 328; *Madison* v. *Fitch,* 18 *id.* 33. In favor of literary and scientific institutions possibly a more liberal construction would be required, for the reason that the encouragement of educational facilities is in furtherance of a public policy deemed so vital to the success and permanence of free government, that it is prominently manifested in our constitution and laws, and is an object constantly cherished by every department of the government of the State. Applying this rule, it cannot be held that the use of the building by lessees for theaters, concerts and mercantile purposes, is a use by a charitable institution, within the meaning of the statute, and it follows that the first and second paragraphs of the answer were good on demurrer, being argumentative denials of the essential fact alleged in the first paragraph of the complaint, that the building was used by the plaintiff for charitable purposes.

The third paragraph of the answer presents the question whether that is a charitable institution, in the sense of the statute, which confines its benefactions to those who have become members of the *Masonic* order, having paid the fees commonly required for that purpose? We think that this question must be answered in the affirmative. It is not essential to charity that it shall be universal. That an institution limits the dispensation of its blessings to one sex, or to the inhabitants of a particular city or district, or to the membership of a particular religious or secular organization, does not, we think, deprive it either in legal or popular apprehension of the character of a charitable institution. If that only be charity which relieves human want, without discriminating amongst those who need relief, then indeed it is a rarer virtue than has been supposed. And if one organization may confine itself to a sex, or church, or

city, why not to a given confraternity? So narrow a definition of charity as the third paragraph presupposes is not, that we are aware of, ever attached to it, and we are not at liberty to circumscribe the effect of the statute, and defeat its intention, by affixing to its terms an unusually limited meaning.

The judgment is reversed, with costs, and the cause remanded, with directions to set aside all proceedings subsequent to the demurrers to the complaint, to sustain the same to the second, third, fourth, fifth and sixth paragraphs, and proceed according to this opinion.

RAY, J., being of counsel, did not sit in this case.

*B. K. Elliott*, for appellant.

*J. Morrison*, for appellee.