ATTORNEYS FOR PETITIONERS
Gregory F. Zoeller
Attorney General of Indiana

John D. Snethen
Tax Litigation Chief

Jessica E. Reagan
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR BOARD OF
COMMISSIONERS OF THE
COUNTY OF HAMILTON
AMICUS CURIAE
Marilyn S. Meighen
Meighen & Associates
Carmel, Indiana

ATTORNEYS FOR RESPONDENT
Jeffrey T. Bennett
Karl L. Mulvaney
Bradley D. Hasler
Bingham McHale LLP
Indianapolis, Indiana



FILED
Dec 15 2010, 12:07 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S10-1003-TA-140

HAMILTON COUNTY PROPERTY TAX
ASSESSMENT BOARD OF APPEALS &
HAMILTON COUNTY ASSESSOR,

*Petitioners (Respondents below),*

v.

OAKEN BUCKET PARTNERS, LLC,

*Respondent (Petitioner below).*

Appeal from the Indiana Tax Court, No. 49T10-0612-TA-113
The Honorable Thomas G. Fisher, Judge

On Petition For Review

**December 15, 2010**

**Rucker, Justice.**

In this opinion we determine that charging below market rent for part of a building rented to a church is insufficient, standing alone, to justify a religious and charitable purpose property tax exemption. Instead, an owner of leased property must provide evidence that it possesses an exempt purpose separate and distinct from the exempt purpose of its lessee.

## Facts and Procedural History

Oaken Bucket is a domestic for-profit limited liability company that owns a multi-unit office building on the northeast corner of Interstate 69 and Hague Road in Fishers. In 2001 Oaken Bucket leased approximately thirty-five percent, or 13,000 square feet of space, to the Heartland Church, Inc. ("Heartland") at a rate of $6.00 per square foot totaling $78,000 annually. In 2003 the parties executed a second lease in which Heartland rented an additional 15,000 square feet at a rate of $8.00 per square foot, totaling $120,000 annually. The leases were triple net leases requiring Heartland to escrow $1,250 per month for Oaken Bucket's property taxes.[1] Over the course of the leases Heartland also paid in excess of $300,000 in build-out costs to improve the leased space.

Oaken Bucket leased the remaining space in the office building to two other entities: A.G. Edwards & Sons, Inc., at a rate of $15.50 per square foot and First Horizon Home Loan Corporation, at a rate of $15.00 per square foot. The A.G. Edwards and First Horizon leases were also triple net leases, but Oaken Bucket was responsible for improvements.

On May 17, 2004, Oaken Bucket filed an exemption application (Form 136) with the Hamilton County Property Tax Assessment Board of Appeals ("County Board") seeking a charitable and religious purposes exemption on the portion of its building leased to Heartland. The County Board denied the application. Oaken Bucket sought review before the Indiana Board of Tax Review ("State Board"), and a hearing was conducted on July 13, 2006.

To demonstrate it was entitled to an exemption, Oaken Bucket introduced evidence that Heartland is a non-denominational church of approximately 500 members that voluntarily

---

[1] A triple-net lease generally requires the landlord to pay for structural repairs while the tenant pays for utilities, property taxes, insurance, and property maintenance. See, e.g., Appraisal Institute, The Appraisal of Real Estate 477 (12th ed. 2001).

associates with the Baptist General Conference and its regional organization, the Midwest Baptist Conference. Oaken Bucket showed that Heartland has been designated as a 501(c)(3) organization by the Internal Revenue Service; provided two weekly Sunday worship services; operated a non-profit daycare ministry for approximately 100 children from Monday through Friday; facilitated weekly youth ministries, adult Bible studies, and fellowship dinners throughout the year; and offered various classes to better acquaint individuals with the church and its beliefs. Oaken Bucket also introduced evidence that the church lacked the financial resources to purchase or provide a down payment for a comparable sized property, and that it charged the church below market rent thereby allowing the church to conduct its services in a space and location that facilitated an expansion of its ministry. The County Board disputed Oaken Bucket's claim concerning below market rent and introduced evidence demonstrating that the fair market value for comparable property in the area ranged between $8.00 and $10.00 per square foot – which is at or just slightly above the rent charged to Heartland.

The State Board issued a final determination affirming the County Board's denial of Oaken Bucket's exemption application. In doing so the State Board concluded that the lease agreement was a standard business arrangement and that Oaken Bucket failed to produce probative evidence that the property was owned or used for anything other than investment purposes. Oaken Bucket filed a timely appeal with the Indiana Tax Court. After a hearing the court reversed the State Board's final determination. Oaken Bucket Partners, LLC v. Hamilton Cnty. Prop. Tax Assessment Bd. of Appeals, 909 N.E.2d 1129 (Ind. Tax Ct. 2009). Essentially the court reasoned there was insufficient evidence supporting the State Board's decision. On rehearing the court clarified and affirmed its opinion. Oaken Bucket Partners, LLC v. Hamilton Cnty. Prop. Tax Assessment Bd. of Appeals, 914 N.E.2d 868 (Ind. Tax Ct. 2009). We granted review.

**Standard of Review**

The Indiana Tax Court was established to develop and apply specialized expertise in the prompt, fair, and uniform resolution of state tax cases. Miller Brewing Co. v. Ind. Dep't of State Revenue, 903 N.E.2d 64, 67 (Ind. 2009). This Court extends cautious deference to decisions within the special expertise of the Tax Court, and we do not reverse unless the ruling is clearly

erroneous.  Ind. Dep't of State Revenue v. Safayan, 654 N.E.2d 270, 272 (Ind. 1995); see Ind. Tax Court Rule 10.  Review of a decision of the Tax Court is subject to the same "clearly erroneous" standard of review as that provided in Indiana Trial Rule 52(A), which provides for appeal from trial court findings and conclusions.  We consider the evidence most favorable to the judgment on appeal and do not reweigh the evidence.  State Bd. of Tax Comm'rs v. Indianapolis Racquet Club, Inc., 743 N.E.2d 247, 249 (Ind. 2001).

**Discussion**

In Indiana all tangible property is subject to taxation.  See Ind. Code § 6-1.1-2-1 ("Except as otherwise provided by law, all tangible property which is within the jurisdiction of this state on the assessment date of a year is subject to assessment and taxation for that year.").  However, the Indiana Constitution provides that the legislature may exempt certain categories of property.[2] Under this grant of authority the legislature enacted Indiana Code section 6-1.1-10-16(a) which provides, "[a]ll or part of a building is exempt from property taxation if it is owned, occupied, and used by a person for educational, literary, scientific, religious, or charitable purposes." Generally exemptions from taxation are granted when there is an expectation that the public will derive a benefit from the exemption.  Foursquare Tabernacle Church of God in Christ v. State Bd. of Tax Comm'rs, 550 N.E.2d 850, 854 (Ind. Tax Ct. 1990).  "Because an exemption releases property from the obligation of bearing its share of the cost of government and serves to disturb the equality and distribution of the common burden of government upon all property, an exemption from taxation is strictly construed against the taxpayer and in favor of the State." Nat'l Ass'n of Miniature Enthusiasts v. State Bd. of Tax Comm'rs, 671 N.E.2d 218, 220-21 (Ind. Tax Ct. 1996) (internal quotation and citation omitted).  In determining whether property qualifies for an exemption, the predominant and primary use of the property is controlling.  Id. at 221.  The taxpayer bears the burden of proving it is entitled to an exemption.  Id.

---

[2] Article 10 Section 1 provides in part:

> (a) The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.  The General Assembly may exempt from property taxation any property in any of the following classes:

> (1) Property being used for municipal, educational, literary, scientific, religious or charitable purposes[.]

4

Oaken Bucket contends that the portion of its property leased to Heartland qualifies for a charitable and religious purpose exemption because it is owned, occupied, and used for such purposes. The County Board does not contest that the space is occupied for religious purposes. However it contends that Oaken Bucket's ownership and use of the space have little to do with religion or benevolence; instead, according the County Board, Oaken Bucket's ownership and use of its property are analogous to that of any other landlord.

In order to qualify for an exemption the taxpayer must demonstrate that its property is owned for exempt purposes, occupied for exempt purposes, and predominately used for exempt purposes. Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs, 686 N.E.2d 954, 959 (Ind. Tax Ct. 1997). "Once these three elements have been met, regardless of by whom, the property can be exempt from taxation." Id. The parties agree that unity of ownership, occupancy, and use by a single entity is not required. Importantly however, "when a unity of ownership, occupancy, and use is lacking (as is the case here), both entities must demonstrate that they possess their own exempt purposes . . . ." Oaken Bucket Partners, LLC, 909 N.E.2d at 1137.

In this case Oaken Bucket argues that (a) it charged Heartland below market rents for the leased space; and (b) this fact manifested Oaken Bucket's charitable purpose because it demonstrated that Oaken Bucket owned and used the Heartland space in a manner different from that of everyday landlords. See Respondent's Br. at 17-19. We first observe that the question of whether the rents charged to Heartland were below market was disputed during the hearing before the State Board. Both sides introduced evidence on this point. The State Board ultimately concluded that Oaken Bucket had for the most part charged market rent for the Heartland space. The Tax Court owes deference to the State Board and may reverse a final determination of the State Board only when its decision is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, is contrary to a constitutional right, power, privilege, or immunity, or exceeds statutory authority. Dep't of Local Gov't Fin. v. Roller Skating Rink Operators Ass'n, 853 N.E.2d 1262, 1265 (Ind. 2006) (citing I.C. §§ 33-26-6-4(d), 33-26-2-2(e)). Despite noting this standard, the Tax Court disagreed with the State Board's conclusion that Oaken Bucket charged Heartland standard market rent for the leased space. We are of the view that the Tax Court erred in this regard. Although conflicting, there was evidence before the State Board to support its conclusion.

5

In any event, assuming the evidence uncontrovertibly showed that Oaken Bucket charged Heartland below market rent, that fact alone would have little bearing on the question of whether Oaken Bucket possessed its "own exempt purposes." Stated somewhat differently, where an entity charges below market rent to a charitable or religious organization, this may demonstrate some indicia of the entity's beneficent motives. But more is required to show that the entity possesses its own exempt purposes. The case of College Corner, L.P. v. Department of Local Government Finance, 840 N.E.2d 905 (Ind. Tax Ct. 2006), illustrates this point. In College Corner a for profit corporation – National City Community Development Corporation ("NCCDC"), and a not-for-profit corporation – Old Northside Foundation, Inc., ("ONF") formed a limited partnership – College Corner L.P. ("CCLP") to revitalize a historic area of the City of Indianapolis. Among other things CCLP purchased and rehabilitated seventeen parcels of real estate and sold them at a profit. CCLP then sought a charitable purposes property tax exemption. The Department of Local Government Finance denied the exemption because NCCDC – the for-profit limited partner – earned a profit from the venture. Id. at 907. On appeal the Tax Court reversed. In doing so, the court noted that Indiana Code section 6-1.1-10-16 "does not differentiate between entities that are not-for-profit and entities that operate for profit." Id. at 911. Rather, the statute allows a charitable purposes exemption to any entity which *otherwise* qualifies. Id. Noting that the actual profit earned by NCCDC was inconsequential, the court observed:

> NCCDC's purpose, as stated in its Articles of Incorporation, is "[t]o promote the revitalization of low and moderate income neighborhoods throughout the local communities of its banking subsidiaries[.]" In partnering with ONF to help restore College Corner, NCCDC was acting pursuant to the directives of the federal Community Reinvestment Act, which encourages financial institutions to help meet the credit needs of the communities in which they are chartered.

Id. (internal citations omitted). In essence NCCDC showed that it possessed an exempt purpose separate and apart from ONF's not-for profit and tax exempt status.

Here, Oaken Bucket has made no such showing. There is no question that Heartland is a religious organization as well as a non-profit 501(c)(3) organization, and thus possesses an exempt purpose in its own right. But aside from arguing that it charged Heartland below-market

6

rent – which as we have noted is a contested point – Oaken Bucket has failed to demonstrate an exempt purpose separate from that of Heartland. At most what Oaken Bucket has proven is that it *leased* and primarily used its property for religious and charitable purposes. This is laudable. But in order to qualify for an exemption the property, among other things, must be "owned" for religious and charitable purposes. I.C. § 6-1.1-10-16. And absent evidence that an owner of leased property possesses an exempt purpose separate and distinct from the exempt purpose of its lessee, the owner holds the property for its own benefit, not that of the public, and thus its property is not entitled to the statutory exemption.

On this point, Travelers' Insurance Co. v. Kent, 50 N.E. 562 (Ind. 1898) is instructive. In Travelers' an insurance company leased certain lands to the Brookston Academy, a school corporation located in Prairie township, and sought an educational purposes property tax exemption. The Court denied the exemption. And although Travelers' was decided under an earlier version of the statute exempting certain property from taxation, the following observations are just as compelling today.

> If the Brookston Academy, or Prairie school township, or the school town of Brookston, were here, as owner of the lands in controversy, there would be no question that, as to such school corporations, the property would not be taxable. But the Travelers' Insurance Company is not engaged in conducting a school; and, if its property should be held to be exempt from taxation because it is suffered to be used for school purposes, then it would follow that any person who rents a hall, a store building, or a part of his house for the use of a school would thus be able to claim such hall, store building, or part of his dwelling free from taxes, – at least, during the time he was so receiving rent for the property.
>
> \*    \*    \*
>
> The very objects for which taxes are in large part assessed are to carry on the educational and benevolent institutions of the state . . . . None of these reasons, however, will apply in favor of a property owner who simply rents or leases his property, to be used for one of the purposes mentioned in the constitution. He holds such property for his own use and benefit, – for his individual profit, – and not for the public good.

Id. at 563-64. See also Spohn v. Stark, 150 N.E. 787, 788 (Ind. 1926) (finding property used for rental purposes and income production not exempt from taxation "merely because the lessee may

7

devote the leasehold to a municipal, educational, literary, scientific, religious, or charitable purpose"). As one court observed:

> [W]hen the owner leases his land to the public for a public use, or to a quasi public body for a charitable or religious use, and applies the rents derived from the land to his own personal advantage, he contributes nothing to the public or to charity, he loses nothing by the use, he is not a benefactor to any one, but he stands before the law in exactly the same light as any one else who leases his land for any other purpose, and uses the rents for his own advantage, and therefore he is not entitled to any special consideration at the hands of the law or the government, and his property is not exempt.

State ex rel. Hammer v. MacGurn, 86 S.W. 138, 139 (Mo. 1905). We agree with these observations. In sum, although leasing space to Heartland for charitable and religious purposes, Oaken Bucket has failed to demonstrate it owned the property for such purposes because Oaken Bucket did not possess an exempt purpose independent of Heartland's charitable and religious purpose. As such, Oaken Bucket has not met its burden of proving it is entitled to an exemption.

**Conclusion**

We reverse the judgment of the Tax Court.

Shepard, C.J., and Dickson, Sullivan and David, JJ., concur.

8